IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:10-CV-184-D

| | |
|---|---|
| VICKEY DAVIS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social )<br>Security, )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM &<br>RECOMMENDATION** |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings. (DE's 16 & 21). Plaintiff has filed a response (DE-24), and the matter is now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), this matter has been referred to the undersigned for the entry of a Memorandum and Recommendation. (DE-23). For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-16) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-21) be GRANTED, and that the final decision by Defendant be AFFIRMED.

**Statement of the Case**

Plaintiff applied for Supplemental Security Income ("SSI") on January 20, 2005 alleging that she became unable to work on May 16, 2002. (Tr. 11). This application was denied initially and upon reconsideration. *Id.* Two hearings were held before an Administrative Law Judge ("ALJ"), who determined that Plaintiff was not disabled during the relevant time period in a

1

decision dated May 12, 2009. *Id.* at 11-26. The Social Security Administration's Office of Hearings and Appeals ("Appeals Council") denied Plaintiff's request for review on October 25, 2010, rendering the ALJ's determination as Defendant's final decision. *Id.* at 3-5. Plaintiff filed the instant action on December 17, 2010. (DE-6).

**Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...

42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453,

1456 (4th Cir. 1990).

**Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the sequential evaluation. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (Tr. 13). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: 1) systemic lupus erythematosus (lupus); 2) thyroid disease; 3) headaches; 4) polyarthalgias/fibromyalgia; 5) insomnia; 6) anxiety/depression; and 7) a question of somatization disorder versus hypochondriac. *Id.* However, the ALJ determined that these impairments were not severe enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 14-15. Based on the medical record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain

3

exceptions. *Id.* at 15.

The ALJ then determined that Plaintiff had no past relevant work. *Id.* at 24. However, based on the testimony of a vocational expert ("VE"), the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. *Id*. at 24-25. Accordingly, the ALJ determined that Plaintiff was not under a disability at any time through the date of his decision. *Id.* at 25-26. These determinations were supported by substantial evidence, a summary of which now follows.

Between May 2001 and January 2006, Plaintiff was treated by Dr. Aydin Atilla and sometimes other physicians in his office, for a variety of symptoms and complaints, including lupus, headaches, insomnia, hypothyroidism, depression, and anxiety. *Id*. at 412, 414, 488-519. Dr. Atilla stated on October 8, 2002 that Plaintiff's lupus was "well controlled [without] medication." *Id*. at 509, 513. On November 12, 2003, Plaintiff was assessed with "Somatisation [sic] DisO? vs. Hypochondriac?" *Id*. at 497. Plaintiff had multiple complaints on October 8, 2004, including "body aches" and "leg weakness." *Id.* at 489. In relation to these complaints the medical record includes the following note: "Suspect Psychosomatic component/somatization dx." *Id.* Likewise, on January 18, 2006, Plaintiff had a "list of problems which [was] in excess of 20." *Id.* at 412. It was determined that Plaintiff had "psychosomatic complaints with blunt affect." *Id.*

Dr. Masqsood Ahmed examined Plaintiff on December 17, 2002. *Id.* at 463-465. Plaintiff reported that she had been diagnosed with lupus in 1992, although her lupus was currently in remission. *Id.* at 463. A review of her systems was largely unremarkable. *Id.* at 464. She was not in acute distress and had full range of motion in both extremities. *Id.* at 465. In addition, Plaintiff had full muscle strength, and was "able to walk on heel-and-toe and do squat and rise."

4

*Id.* Ultimately, it was determined that Plaintiff's "[p]rognosis for a gainful employment [was] fair." *Id.*

Plaintiff was examined by Dr. Leslie Reynolds on December 7, 2004. *Id.* at 461-462. She complained of persistent headache, dizziness and tinnitus. *Id.* at 462. A recent MRI and CT were both unremarkable. *Id.* at 461. Upon examination, Plaintiff had full motor strength and a normal gait. *Id.* at 462. During a March 2, 2005 follow up, medication had decreased the intensity of Plaintiff's headaches significantly with no side effects. *Id.* at 458.

On July 14, 2005, Plaintiff was examined by Dr. Ahmed. *Id.* at 451-454. Her lupus was still in remission and was "doing well". *Id.* at 451. During this examination, Plaintiff asserted that her headache "medication [did] not seem to help her much." *Id.* at 451-452. Plaintiff had full range of motion and muscle strength. *Id.* at 453. Dr. Ahmed specifically noted that Plaintiff had "normal neurological exam and good mobility." *Id.* She was also able to raise her arm overhead and perform dexterous movements. *Id.*

Dr. Robert Gardner assessed Plaintiff's physical RFC on July 21, 2005. *Id.* at 441-448. Plaintiff had no exertional, postural, manipulative, visual, communicative or environmental limitations. *Id.*

Plaintiff was examined by Dr. Jerome Albert on August 3, 2005. *Id.* at 438-440. Her primary complaints were lupus, dizziness, hypothyroidism, depression and insomnia. *Id.* at 438. It was determined that Plaintiff functioned in the average range of intellectual functioning. *Id.* at 440. She was diagnosed with: 1) anxiety disorder with agoraphobia and anxiety attacks; and 2) "major depression, moderate, recurrent." *Id.* Dr. Albert opined that Plaintiff was able to understand, retain and follow simple instructions. *Id.* Likewise, Plaintiff was capable of managing benefits to her own interest. *Id.* However, he also noted that Plaintiff "would have

5

Case 4:10-cv-00184-D   Document 25   Filed 01/19/12   Page 5 of 16

difficulty tolerating the stress and pressures associated with day-to-day work activities." *Id.* Ultimately, Dr. Albert indicated that Plaintiff may be able to perform some work, if "she could sit by herself in an isolated situation." *Id.*

On October 21, 2005, Plaintiff's mental RFC was assessed by Dr. Clifford Charles. *Id.* at 422-435. It was determined that Plaintiff's depression and agoraphobia did not precisely satisfy the diagnostic criteria of any listed impairment. *Id.* at 425, 427. Dr. Charles indicated that Plaintiff had moderate limitations in: 1) her activities of daily living; 2) maintaining social functioning; and 3) maintaining concentration, persistence or pace. *Id.* at 432.

Plaintiff was seen by Dr. Dan Henshaw on February 16, 2006. *Id.* at 403. She complained of hair loss and itching over the entire body. *Id.* Dr. Henshaw recommended that Plaintiff be given a complete work-up to rule out Systemic Lupus Erythematosus ("SLE"). *Id.* He explained that Plaintiff's "symptoms and the lab results support SLE as possible diagnosis for the patient's overall condition and medical complaints." *Id.*

Dr. George Ho examined Plaintiff on May 4, 2006. *Id.* at 408-411. A physical examination revealed that Plaintiff was tender over the right lateral epicondyle and right upper trapezius area, otherwise, it was unremarkable. *Id.* at 410. She was diagnosed with "immune thrombocytopenia, currently inactive." *Id.* Dr. Ho recommended that Plaintiff seek correction of her sleep disorder and begin a regular exercise program. *Id.* In addition, Dr. Ho opined that a diagnosis of lupus was "untenable at this point." *Id.*

On June 9, 2006, Dr. Bertron Haywood assessed Plaintiff's physical RFC. *Id.* at 395-402. He determined that Plaintiff could: 1) occasionally lift and/or carry 50 pounds; 2) frequently lift and/or carry 25 pounds; 3) stand and/or walk (with normal breaks) for a total of about six hours in an eight hour workday; 4) sit (with normal breaks) for a total of about six hours in an eight hour

6

workday; and 5) push and/or pull with no limitations other than those already shown for lifting and carrying. *Id.* at 396. No postural, manipulative, visual, or communicative limitations were noted. *Id.* at 397-399. No environmental limitations were noted except that Plaintiff was to avoid hazards such as machinery and heights. *Id.* at 399. Plaintiff was "limited to medium exertion due to her Chronic Pain Syndrome." *Id.* at 397. Ultimately, Dr. Haywood stated that Plaintiff had the RFC to perform light work with additional limitations. *Id.* at 394.

Plaintiff's mental RFC was assessed by Dr. Ben Williams on July 5, 2006. *Id.* at 376-393. Dr. Williams indicated that Plaintiff had moderate limitations in: 1) her activities of daily living; 2) maintaining social functioning; and 3) maintaining concentration, persistence or pace. *Id.* at 390. He also determined that Plaintiff could perform simple, routine, repetitive tasks in a low stress setting. *Id.* at 392, 378. During his RFC assessment, Dr. Williams opined that Plaintiff was moderately limited in eight categories, markedly limited in one category, and not significantly limited in the remaining 11 categories. *Id.* at 376-379. Finally, Dr. Williams noted that Plaintiff could: 1) understand and remember simple instructions; 2) maintain concentration and persist at tasks for short periods of time; and 3) work in social settings with limited social interaction. *Id.* at 378.

Dr. George H. West examined Plaintiff on August 8, 2006. *Id.* at 286. During a prior evaluation, Dr. West had determined that Plaintiff "did not have lupus." *Id.* at 289. A physical examination was unremarkable. *Id.* X-rays of Plaintiff's knees and cervical spine were "basically benign", as was most of Plaintiff's blood work. *Id.* Another physical examination on August 18, 2006 was also unremarkable, although Plaintiff was referred to ECU Greenville for further management related to possible lupus. *Id.* at 286.

On August 15, 2006, Plaintiff underwent a sleep study, which revealed that her sleep was

7

fragmented and poor, but there was no clinically significant obstructive sleep apnea.  *Id.* at 287-288.

Plaintiff was examined by Dr. Randall White on September 28, 2006.  *Id.* at 310-315. During this examination, Plaintiff demonstrated "mild alopecia, musculoskeletal pain, weakness and fatigue."  *Id.* at 310.  She had full range of motion in her hands, wrists, elbows, shoulders, hips, knees, and ankles.  *Id.* at 315.  Her range of motion was mildly reduced in the cervical spine secondary to pain.  *Id.*  Dr. White stated that Plaintiff's prior history was "very consistent with lupus" however, he further indicated that "[n]othing else on exam . . . suggest[s] the diagnosis today."  *Id.*  Although, Dr. White planned to do further blood work to definitively diagnose Plaintiff, he did not schedule a specific follow-up appointment with her.  *Id.*

On August 18, October 9 and October 19, 2006, Plaintiff was examined by Dr. West again. *Id.* at 272, 282, 286.  Each of these examinations was unremarkable.  *Id.*  On October 19, 2006, Dr. West reported that plaintiff likely had lupus, "but a low grade degree at this point in time," and he further reported that plaintiff did not need Prednisone or a stronger medication.  *Id.* at 272.

An MRI of plaintiff's cervical spine on November 17, 2006 revealed probable "chronic right paracentral disc herniation with osteophytes and resulting cervical spinal cord contact."  *Id.* at 353.  No displacement or cord compression was demonstrated.  *Id.*

Dr. West examined Plaintiff on November 30, 2006.  *Id.* at 266.  The examination results were unremarkable. *Id.*  According to Dr. West, Plaintiff had "more symptoms than positive disease findings."  *Id.*  However, he also stated that Plaintiff's symptoms were "consistent with a possible diagnosis of lupus . . ."  *Id.*

Plaintiff underwent a therapy session on December 15, 2006.  *Id.* at 339.  She reported anxiety and a fear of being around people.  *Id.* at 339.  During this session, Plaintiff's:  1) mood

8

was anxious; 2) attention and concentration were good; and 3) insight and judgment were fair. *Id.* After this session, Plaintiff was referred for a psychiatric assessment. *Id.*

Dr. Nadir M. Attiah examined Plaintiff on January 23, 2007. *Id.* at 335-338. She was diagnosed with "social phobia", and depression, not otherwise specified, was ruled out. *Id.* at 336. Plaintiff refused to take medication for her anxiety. *Id.* at 337. Ultimately, Dr. Attiah indicated that Plaintiff's symptoms were "mild" and that her expected outcome would be a "[r]eturn to normal functioning." *Id.* at 337-338.

During therapy sessions conducted on February 8, 2007 and March 13, 2007, Plaintiff's: 1) mood was anxious; 2) attention and concentration were fair; 3) insight and judgment were fair; and 4) affect was congruous with her mood and thought. *Id.* at 333-334. During these sessions, Plaintiff was working part-time at a group home for persons with mental retardation. *Id.* at 334. Plaintiff had also "put her resume on line for office jobs." *Id.* at 333.

On March 22, 2007, Plaintiff was treated by Dr. Attiah for her social phobia and anxiety. *Id.* at 329-332. Her impairment level was again described as "mild." *Id.* at 329. It was also noted that these symptoms had "somewhat improved." *Id.* at 331. Her prognosis was still described as a "[r]eturn to normal functioning." *Id.* at 332.

Physical examinations of Plaintiff by Dr. West on January 26, 2007, February 13, 2007 and May 30, 2007 were all unremarkable. *Id.* at 259-260, 265. During the January 26, 2007 examination, Dr. West stated that Plaintiff had "multiple complaints and long list of things she wants to have checked . . .[f]or what reason I do not know . . . [p]robably someone else . . . assisted her in all of this." *Id.* at 265. An EKG taken on February 13, 2007 was "relatively benign." *Id.* at 260. On May 30, 2007, Plaintiff's symptoms were improving with treatment, albeit slowly. *Id.* at 259. Plaintiff was examined by Dr. West again on August 23, 2007, for a

9

follow-up of her complaints of neck pain. *Id.* at 258. Other than her complaints of neck pain, Plaintiff was described as "relatively stable." *Id.* A physical examination was unremarkable and an x-ray of her cervical spine was normal. *Id.* at 245, 258. Dr. West stated on October 23, 2007, that Plaintiff "has some central nervous symptom [sic] that could be possibly related to Lupus. *Id.* at 255. Plaintiff continued seeing Dr. West until April, 2008 for a variety of symptoms and complaints. At every visit where a physical examination was conducted, the findings were unremarkable. *Id.* at 252-257.

Plaintiff was admitted to Lenoir Memorial Hospital on October 7, 2007 "because of the onset of various vague signs and symptoms." *Id.* at 346. Her final diagnoses were: 1) acute chest and abdominal pain; 2) dyspnea; 3) palpitations; and 4) a history of lupus infections. *Id.* Upon discharge, her symptoms were under control and she was discharged in stable condition. *Id.* at 346-347. The treating physician stated that Plaintiff's symptoms may be "suggestive of lupus, I am not altogether 100% sure." *Id.* at 346.

An October 10, 2007 pulmonary function study was "technically adequate" and showed no overt obstruction. *Id.* at 162. A review of her systems was largely negative. *Id.* at 161.

During a July 29, 2008 therapy session, Plaintiff stated that she was "feeling better", although she still "gets down from complications of having Lupus which affect her schooling and work." *Id.* at 156. During this session, Plaintiff's: 1) mood was anxious; 2) attention and concentration were good; and 3) insight and judgment were fair. *Id.* at She was diagnosed with social phobia. *Id.* On August 14, 2008, Plaintiff again "reported she is doing somewhat better." *Id.* at 155. Plaintiff reported an inability to sleep more than five hours a night on October 10, 2008 and was diagnosed with anxiety. *Id.* at 154. It was noted on November 14, 2008 that Plaintiff was "doing fine." *Id.* at 153. Other than not getting along with her daughter, Plaintiff

had no complaints. *Id.* It was also noted that Plaintiff drove her daughter to work. *Id.* During a December 2, 2008 therapy session, Plaintiff stated that she had not been feeling well. *Id.* at 152. She was sleeping poorly and was experiencing a "burning pain sensation throughout different parts of her body." *Id.* Plaintiff also reported feeling paranoid and uncomfortable in public. *Id.*

Dr. Mildred Kwan examined Plaintiff on February 11, 2008. *Id.* at 318-322. Physical examination revealed that plaintiff's left abdomen wall was tender to palpation. *Id*. at 321. Otherwise, Plaintiff had full range of motion in her shoulders, elbows, hips, knees, ankles, hands, and feet. *Id*. She also had full muscle and grip strength. *Id*. Plaintiff reported increased pain with exercise, although it was not excessive. *Id*. at 319. Ultimately, Dr. Kwan opined that Plaintiff was likely suffering from "SLE based on previous diagnosis." *Id*. at 321. Based on this diagnosis, Plaintiff was treated with Plaquenil. *Id*. at *Id*. On June 16, 2008, Plaintiff continued to report "aching and weakness" all over. *Id*. at 213. Upon examination, Plaintiff again had full muscle strength, and her tenderness to palpation was only mild. *Id*. at 214, 219. It was also noted that Plaintiff was "not on optimal Plaquenil at this time." *Id*. at 219. During a January 8, 2009 examination, Plaintiff reported " arthralgias, alopecia, general malaise and anemia." *Id*. at 178. Her medications were causing her parathesias to improve. *Id*. She was in no apparent distress and was able to sit comfortably in a chair. *Id*. at 179.

On December 4, 2008, Dr. Elizabeth Foreman treated Plaintiff for her insomnia. *Id*. at 183-187. Plaintiff was "under some stress . . . given the fact that she is in school and [was] nearing the final exam time . . . so she [was] studying quite a bit." *Id*. at 184. She was counseled on sleeping hygiene and prescribed medications. *Id.* at 183-187.

Plaintiff saw Dr. Claude Robey for treatment of her hypothyroidism, between February 2002 and February 2009. *Id.* at 197-99, 201-203, 208-210, 296-298, 300-301, 418, 481, 540-

11

541, 549. At a number of visits, Dr. Robey noted that Plaintiff appeared euthyroid. *Id.* at 203, 301, 418, 540, 549. Her general appearance was frequently well nourished and she was in no acute distress. *Id.* Dr. Robey stated on April 27, 2007 that Plaintiff's "energy level was good" and that she "is now working full-time." *Id.* at 300. On February 27, 2009, Plaintiff had no complaints except for some memory loss. *Id.* at 197. Dr. Robey's impression was that Plaintiff's hypothyroidism was doing well. *Id.* at 199. He also indicated that Plaintiff was "doing better with her lupus/fibromyalgia." *Id.* at 197.

On February 27, 2009, Plaintiff underwent another therapy session. *Id.* at 151. Plaintiff's eye contact was good, she was oriented times four, her relatedness was cooperative, her mood and affect were anxious, her attention and concentration were good, and her insight and judgment were good. *Id.* at 151. During a April 2, 2009 session, Plaintiff "reported she has felt depressed 'on and off'" *Id.* at 150. It was noted that plaintiff's eye contact was good, she was oriented times four, her relatedness was cooperative, her mood was depressed and anxious, her attention and concentration were good, her affect was anxious, and her insight and judgment were good. *Id.* at 150. On both occasions, Plaintiff was diagnosed with social phobia. *Id.* at 150-151.

During the hearing in this matter, Plaintiff testified that she was taking online classes at Pitt Community College ("PCC"). *Id.* at 604. She stated that she was a recipient of disability services at PCC, meaning she was granted additional time to complete assignments when she did not feel well. *Id.* Plaintiff indicated that, at various times between 2006 and 2008, she was employed, and that her duties consisted of assisting people with mental and developmental problems. *Id.* at 607-608. Describing her symptoms, Plaintiff testified that she was always in pain and always weak. *Id.* at 611. She stated that she had difficulty typing because her fingers

12

become numb. *Id.* Plaintiff also noted that she feels "strain" in her neck and head and pressure in her chest. *Id.* This neck pain sometimes results in dizziness, and when she tries to read "things get blurry." *Id.* In summary, Plaintiff testified that she felt "sick all the time" and that she was "always in pain." *Id.* According to Plaintiff, this pain never fluctuated or subsided, and was accompanied by paresthesia. *Id.* at 614, 618. She stated that she had been diagnosed with and was being treated for lupus. *Id.* at 611. Furthermore, Plaintiff alleged she suffered from chronic insomnia. *Id.* at 613. She was also being treated for hypothyroidism. *Id.* Plaintiff was also receiving psychiatric care from East Carolina University. *Id.* Because of her symptoms, Plaintiff contended that she could barely lift 10 pounds. *Id.* at 614. Likewise, she stated that she could only stand for 10 minutes before becoming dizzy. *Id.* at 615. Plaintiff testified she could only walk about a block before she becoming short of breath due to her asthma. *Id.* She contended that she had difficulty sitting for any length of time due to pain and cramping in her head and neck. *Id.* Later, Plaintiff added that she uses a computer daily, but has to take breaks every minute to avoid feeling "pressure in [her] chest and in [her] neck." *Id.* at 617. Similarly, Plaintiff testified she had difficulty lifting and holding her arms up because of muscle weakness. *Id.* at 616. Finally, Plaintiff noted that she has "episodes where [she] stutter[s] or get[s] tongue-tied more often than normal." *Id.* at 618. She also has episodes where she "forget[s] what [she] was saying." *Id.*

Dr. Helen Cannon also testified during the hearing in this matter. *Id.* at 619. After reviewing Plaintiff's medical records and listening to Plaintiff's testimony, Dr. Cannon opined that Plaintiff did not meet or equal any listed impairment. *Id.* at 621-622. Likewise, Dr. Cannon indicated that Plaintiff could perform simple, routine, repetitive tasks, and could carry 20 pounds. *Id.* at 622.

13

Finally, the VE in this matter testified that a person with Plaintiff's RFC could perform jobs which exist in significant numbers in the national economy. *Id.* at 625-627.

Based on this record, the ALJ made the following specific findings in addition to those previously noted:

> The claimant can stand and/or walk 6 hours in an 8-hour workday with normal breaks; sit for 6 hours in an 8-hour workday with normal breaks; lift and/or carry 10 pound[s] frequently and 20 pounds occasionally; can alternate between sitting and standing after 45 minute intervals; should avoid concentrated exposure to hazards; and can understand and remember simple instructions; maintain sufficient concentration, persistence and pace to perform simple, routine, repetitive tasks; interact frequently with coworkers, supervisors and members of the public; and adapt to routine changes in the job setting . . .
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment . . .
>
> Overall, having considered the objective medical evidence, the claimant's subjective complaints and the opinions of treating, examining and non-examining sources, the Administrative Law Judge finds that the claimant has the residual functional capacity to perform a range of light work with environmental and mental restrictions . . .
>
> *Id.* at 15, 22, 24

The Court hereby finds that there was substantial evidence to support each of the ALJ's conclusions. Moreover, the ALJ properly considered all relevant evidence, including the evidence favorable to Plaintiff, weighed conflicting evidence, and fully explained the factual basis for his resolutions of conflicts in the evidence. Plaintiff's argument relies primarily on the contention that the ALJ improperly weighed the evidence. However, this Court must uphold Defendant's final decision if it is supported by substantial evidence. Although Plaintiff may

14

disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court do, her claims are without merit.

**Conclusion**

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-16) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-21) be GRANTED, and that the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Thursday, January 19, 2012.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE